So we can proceed to our first case, which is number 20-4081, Soto v. Disney Severance Pay Plan. Mr. Preminger? Thank you, Your Honor. May it please the Court? My name is David Preminger. I represent the Plaintiff Appellant, Nancy Soto. The defendants claim that the notice provision in the plan is an eligibility requirement. Our position is that it is not. It is not substantive. It is merely ministerial. It simply informs a claimant, as a plan must, that the claimant's claim has been approved. In essence, a notice informs a person that they are a participant within the parlance of the plan. The plan defines participant differently than ERISA, and it's basically somebody who has met all the eligibility requirements. So if a notice is informing you that you have met the eligibility requirements, it cannot in itself be an eligibility requirement. Mr. Preminger, can I ask you, although the District Court didn't decide it on this grounds, with respect to the eligibility requirements, how does your client qualify as having been laid off? They argue that the plan incorporates Section 409A in the regulation, Treasury regulation, and you have to be under that definition. You have to be willing and able to continue to perform services, and obviously your client was disabled, so it would not meet that definition. So why isn't that a separate grounds for ineligibility? Because it's inapplicable, Your Honor, and I'll explain why. The plan has a generic provision that it intends to be in compliance with Section 409A of the code, but the definition of layoff simply says that it must be a separation from service within the meaning of 409A and subparagraph H of the regulation under that section. Subparagraph H deals with a separation from service, and SOTO's termination clearly was a separation from service within that meaning. The defendants are arguing that her termination does not qualify as an involuntary termination under Paragraph N of the regulation, but Paragraph N is nowhere mentioned in the definition of layoff. What is the definition of separation of service under H? The definition is basically someone whose employment has been terminated, that's it, which hers was. It has nothing to do with whether or not a person was able to continue working, it simply means that the person was terminated. And under the doctrine of expressio unius exclusio alterius, obviously they knew how to pick which regulation they wanted to apply. They only mentioned separation from service under the regulation, not an involuntary termination, and they're stuck with the regulation that they picked. In the general reference to Section 409A, I thought the plan says that an involuntary termination won't be considered a layoff if the involuntary termination does not qualify as a separation of service within 409A. And that it refers also to the Treasury regulation, but 409A in N does include the definition that the person has to have been willing and able to continue performing services. So I thought, why doesn't that incorporation of the ability to perform services within 409A, and the whole process here, of course, is committed to the company and its sole and absolute discretion. So why would it be arbitrary and capricious for the company and its discretion to refer to this meaning in Section 409A? Well, first of all, because the specific takes precedence over the general, and the definition of layoff with respect to this thing says, in no event will an involuntary termination of employment be considered a layoff if such involuntary termination does not qualify as a separation of service within the meaning of Section 409A of the code and Treasury regulation Section 1.409A-1H. Paragraph H only deals with a separation from service. It is paragraph N that deals with an involuntary termination. The definition of layoff has to be read that way or else you render that provision nuggetory if you simply say, no, we're going to look at all of 409A. You would agree also, wouldn't you, though, that the definition of layoff commits the decision about what is a layoff to the sole and absolute discretion of the employer? No, I do not. You don't? I do not. The definition of layoff, whether or not somebody has incurred a layoff, is an eligibility requirement that I do concede. That, then, is subject to a decision by the committee. The committee is the one that has been granted discretion to make determinations as to eligibility. So, excuse me, so you would not say that the application of this, what is a layoff, the determination of what is a layoff, is also committed to the employer's discretion that is subject to constraints on arbitrary and concretiousness? I would not say it is subject to the employer, to Disney's discretion. The committee, which is the plan administrator, has been granted discretion under the plan to interpret its terms. But the problem is that if, in fact, a plan term is unambiguous, which the definition of layoff is, then there is no discretion because there is nothing to be interpreted. The definition of layoff is very clear. It has to be a termination from the company except for reasons of poor performance or misconduct. There's no allegation that it was for poor performance or misconduct. There's no dispute that it was involuntary. So there's nothing to interpret there. It then says it has to be a separation from service within the meaning of 409A. And 409A itself says nothing really about involuntary terminations. And Regulation Paragraph H, which only defines a separation from service, it is an unambiguous definition. Under your approach, then, anyone who is receiving disability benefits would also receive the severance benefits, right? It would be essentially... I think it may depend. First of all, disability benefits is not listed as a reason for denying severance benefits. So there would have to be some other basis for that. The other thing I raised, and I cannot discuss this because it's not in the... I can't make a specific allegation about it because it's not in the record. But disability plans often require... Well, not require, but either the employer pays for the disability coverage or the employee pays for the coverage. If, in this instance, Ms. Soto paid for her coverage, then it seems to me it would be entirely unreasonable, arbitrary and capricious, for the plan to deny severance benefits because a participant had had the foresight to purchase their own disability insurance. So that's an issue which I don't think could be disposed of on a motion to dismiss. I think that needs to be explored in further proceedings, in discovery, for example, to find out what exactly this is going on there. And also, it depends on the plan's terms. If the plan terms don't preclude the payment of severance benefits, if a person is contemporaneously receiving disability benefits, then the person would be entitled to severance benefits. Thank you very much. You've reserved a couple of minutes rebuttal. We will hear from Disney. I please the court. My name is Shaili Sharma and I represent the Disney parties. This is a straightforward case. Disney has a severance pay plan and the plan sets out three distinct criteria that a claimant must meet to receive severance benefits under the plan. Ms. Soto, who is a former Disney employee, wants severance benefits under this plan even though she doesn't meet two out of the three criteria. In fact, as to one of those criteria, she concedes in her complaint that she doesn't meet it. And to get around that fact that she doesn't meet the plan's eligibility criteria, she's asking the court to rewrite the plan, even though she cannot identify a single provision of ERISA that this plan violates. Ms. Sharma, I have difficulty with Disney's position as to the notice requirement. The notice requirement seems to me to be closely tied, if it's going to be meaningful and subject to ERISA at all, to the actual substantive eligibility requirements. The notice requirement can't be just a free-floating, arbitrary, and capricious kind of subject to that kind of review about whether the company decided to send a notice or not, it seems to me. Isn't it actually tied to eligibility and the notice just confirms eligibility, that is, that the person who suffered a layoff? How can that be under ERISA? How is that consistent with ERISA's principles of having a fiduciary obligation to participants in the plan? Your Honor, you raised a couple of points. Let me start by saying the notice requirement is an independent eligibility requirement in the plan. In other words, just because an individual is an eligible employee and suffered a layoff doesn't automatically mean that he or she is entitled to notice. In terms of the fiduciary... Your Honor, what standards does the company apply in sending a notice? If a person has suffered a layoff and is eligible under everything else in the plan for a severance payment, what standards govern whether the company sends a notice or not that implements the severance payment? Your Honor, the company actually has discretion in its capacity as an employer to determine whether or not to provide that notice. The unreviewable then, I think, is the issue. There's no criteria for the issuance of a notice. So if someone satisfied all the other requirements had been laid off, then the company could just say, you know, we don't care. We're just not going to give you the severance and be unreviewable under your approach just because they decided not to send the notice. Isn't that what would happen? There's no criteria for the issuance of the notice. It's unreviewable. Well, Your Honor, whether or not to provide notice is a discretionary act of the employer. But that doesn't necessarily make it unreviewable. For instance, if there was a dispute about, you know, that Disney provided written notice and then reneged on that written notice. Where you, you know, eliminated 10 employees and five of them you gave the severance to and five of them you just didn't give it to. They're exactly similarly situated. You just decided not to send a notice to five out of the 10. Your position would be we have the discretion to do that, even though it would be completely arbitrary to give it to five and not the other. You would say the courts can't review that because we decide who sends who we send a notice to or not. Isn't that what your position would be? Yes, Your Honor. Disney has the absolute discretion to decide whether to provide. That means the courts can't review an ERISA plan for arbitrary decision making because Disney has chosen to have the absolute authority to issue or not issue notice under no criteria. Right. Well, Your Honor, let me say what case stands for that proposition. Well, Your Honor, let me say first that ERISA doesn't have a provision that requires employers to provide severance. So it is a discretionary act of an employer to decide whether to provide severance. But I provide severance. There has to be the ability to review it. Right. They don't have to provide severance. They don't have a plan for severance. But once they decide to have a plan, doesn't have to be certain. We have to be able to review that whether they're satisfying the fiduciary obligation or not. And Your Honor, it is reviewable in certain circumstances, whether an employer decides to provide severance to five out of 10 employees who were laid off. That is a discretionary act of the employer. Once the employer actually communicates that with the employees, that's where the fiduciary act of the employer comes in. And that's what's reviewable under ERISA. The proposition that if the employee meets all the eligibility criteria, other than whether or not they sent a notice that a company can just decide, we're not going to send you the notice, it's unreviewable. Which case have we said that or any other court has said that? Well, Your Honor, for instance, in Iqbal v. Teva, which was a case out of this circuit, 753 Federal Appendix 50. It is a summary order. Teva reserved the right to determine eligibility for severance requirements. But that was under state law. That was not an ERISA case, right? It wasn't an ERISA case, Your Honor. And this court found that there's no contractual provision that cabins discretion to pay severance, even if there's no improper conduct. So in that case, the plan actually said that termination for improper conduct was one listed basis under which severance might be denied. But, you know, this opinion, the court's opinion held that there's no contractual provision within the plan itself that prevents the employer from exercising discretion not to provide notice, even if there's no improper conduct. So can it do it on a, you know, give, as Judge Bianco was suggesting, give all redheads severance benefits when they are laid off and nobody else? And can it choose whatever even potentially discriminatory basis on paying severance? You know, I don't understand how this would really qualify even in this ERISA plan if, as Judge Bianco is exploring with you, there are no standards at all. So, Your Honor, ERISA plans are still subject to compliance with regular employment discrimination laws, such as Title VII. A claim, of course, would have to be brought under Title VII. ERISA itself doesn't have any specific anti-discrimination provisions. And the Supreme Court actually back in Shaw versus Delta Airlines back in 1983 recognized that that was in part because ERISA plans are still going to be subject to other employment discrimination laws. In your view, it could be totally arbitrary on, you know, the person granting, sending out notices decides not to send notices to redheads. And that's OK because ultimately no one has any entitlement to severance is your position. Yes, Your Honor. It's a discretionary act of the employer. And so if it doesn't violate any anti-discrimination employment laws, then that's the case. If it does violate an anti-discrimination employment law, for instance, like Title VII, a claim would have to be brought under Title VII. And we simply don't have any allegations of that nature here. I guess I'm still having trouble with this. I mean, it seems to me that under Murphy versus IBM and a string of cases since then, I mean, that discretionary act relating to eligibility is in fact subject to arbitrary and capricious review. That doesn't seem to be such a controversial statement, but you are taking the position that that is not true. Am I correct? Well, not exactly, Your Honor. There's two levels of discretion. Actually, the first level of discretion that we're talking about here is the employer's decision whether or not to provide notice. The reviewable act in Murphy versus IBM was actually whether the plan administrator had discretion to determine whether an employee was necessary in that case. And so that decision by the plan administrator is reviewable under an arbitrary and capricious standard. But the decision to send notice or not send notice is not subject to any review at all. That's your position. Well, Your Honor, the decision by the employer whether to send notice or not send notice is not subject to review under ERISA. Yes. Can I ask you to suspend a few minutes, a few seconds on the layoff definition? You heard your adversary say that the reference is 409A1H and not N1, and therefore your argument is not persuasive. Can you just address that briefly? Of course, Your Honor. Please take your time to respond to Judge Bianco's question. Thank you. So the definition of layoff, as Your Honor has noted, actually doesn't say that it must be a separation of service. The way it's constructed, it says a layoff, it will not be considered a layoff if it is not a separation of service under the tax regulations. And the general requirement that the plan be construed in compliance with Code section 409A and its implementing regulations does govern. And that's why it is appropriate to look at the implementing regulations definition of involuntary termination, which in this case is a separation of service where the service provider was willing and able to continue performing services. In this case, Ms. Soto wasn't able to continue providing services. And so, you know, it's not what one would think of as a layoff. For instance, if somebody died, that wouldn't be considered a layoff. Sorry, the willing and able to continue performing services, that's drawn from 409A1N1. Is that right? That's right. Exactly. And your adversary says that, if I was understanding correctly, that it's 409A1H that is more properly at issue. And your Honor, that's not the case because the way that the plan definition of layoff is drafted, it actually says that it won't be considered a layoff unless it's a separation of service. So a separation of service is a minimum criteria for it to be considered a layoff. But that's certainly not the only way to interpret layoff or an involuntary termination. But the language of the plan defining layoff is that it's an involuntary termination of employment, except for reasons of poor performance or misconduct. This is neither of those. This is not poor performance or misconduct, is it? No, Your Honor. We can see that it's not poor performance or misconduct. But it is an involuntary termination, isn't it? No, Your Honor. It's not an involuntary termination because if you construe it as the plan requires, consistent with Section 409A of the Internal Revenue Code and its implementing regulations, then an involuntary termination would be one where the employee was willing and able to continue providing services. In this instance, as Ms. Soto was disabled, as would be the case if somebody died, for instance, if an employee died, they're not willing and able to continue providing services. It's not something that one would think of as a layoff. And it's consistent with the definition of involuntary separation under the Internal Revenue Code. But, okay, but 1.409A1H then talks about what you do with somebody who's on sick leave for a period of not exceeding six months, and in some cases, if it's 29 months. But this seems to contemplate the very situation we have here, doesn't it? No, Your Honor, it doesn't. The separation of service provision actually deals with certain payments that are triggered by the company under the plan and under the tax laws. And it's not entirely consistent with what one would think of as a layoff or an involuntary termination. The way the provision is drafted is simply to say that if it does not qualify for the minimum rules under separation of service under 26 CFR section 1.409A1H, then it cannot be considered a layoff. All right, thank you. We've kept you past your time. You'll hear what your opponent has to say. Thank you very much. Mr. Previnger. Thank you, Your Honor. A couple of things. One, just to clarify, Iqbal did not concern an ERISA plan. In order to be an ERISA plan, there are various bells and whistles that comply with certain requirements. Among those are that there must be an identifiable class of beneficiaries. I mean, the court recognized this over 30 years ago in the Grimaud case. If, in fact, they have absolute discretion not to send a notice, then there is no identifiable class of beneficiaries. I think I get that, Mr. Preminger. I guess my question to you is, if we disagree with Ms. Sharma and we say that, no, the decision to send a notice and the decision is about eligibility are subject to arbitrary and capricious review, then doesn't that solve the problem? And then isn't Judge Nathan able to rely on the lack of notice as a basis to dismiss? As long as it wasn't arbitrary and capricious, why isn't that then a sufficient basis to dismiss? Well, first of all, I disagree that the arbitrary and capricious standard would apply. The arbitrary and capricious standard applies only if the plan gives discretion to make a determination. The plan gives no one any discretion to decide whether or not to send a notice. So, failure to send a notice would be reviewed on a de novo basis. Excuse me just a second, but the plan does give the company the sole and absolute discretion to determine who has been laid off, doesn't it? It gives them the discretion to determine whether or not someone was terminated for poor performance or misconduct. It doesn't give them discretion to determine whether or not there was a layoff, whether there was an involuntary termination. It just gives them discretion if you will see comma, there's a comma there, where the employee from the company, comma, except for reasons of poor performance or misconduct as determined by the company and its sole and absolute discretion. You're saying the discretion that's given to the committee to determine eligibility doesn't implicate that standard either? The discretion that is given to the committee has nothing to do with the notice because the committee decided to give the notice. Okay, but if we were to look at the issue of layoff, that would be under an arbitrary and capricious standard, right? Whether or not this qualifies as a layoff or not, right? Actually, in the brief, we argued that it would not be the arbitrary and capricious standard for a couple of reasons. One is that the appeal decision was late. And under this court's decision in HALO, that means that the novo standard will apply regardless of whether or not discretion was granted. And the other is, and this is an issue which would have to be explored on remand, is there is an inherent conflict because Disney both makes the decision about the notice and also funds the plan. And it's a question whether or not that conflict affected the decision not to provide the notice. The last thing I wanted to mention is that we made a waiver argument as far as the issue of the tax provision and the disability benefits provision, neither of which are mentioned in the denial letter. And the Department of Labor's regulation specifically required that all reasons for denial of a benefit have to be set forth in the denial letter. They may not identify the regulation, but they say she's not eligible because she's disabled, right? Because she was what? Disabled. They say she's disabled. No, they did not say it was because she was disabled. They just mentioned that she had been getting disability benefits. They mentioned that she was terminated because she couldn't work, but they did not mention that. Soto's separation from the company was processed on account of her inability to return to work on account of a disability illness consistent with the facts and circumstances of her separation. There's no, you know, then they say there's no indication of job elimination, reduction in force, geographical location or other circumstances that would be construed as a layoff for planned purposes. So they say she's separated for disability and therefore she doesn't qualify as a layoff. They don't say the code provision, but I don't know if the law requires you to cite the code, right? Well, I think it requires you to cite to the specific plan section that you're relying on, which it did not. The regulation does require that. Well, is there any question about, I mean, the plan provision is 2L, right? Is there any reason to think it's not that? Well, but the reason that they gave for denying the benefit was twofold. One, obviously she didn't get the notice, but she didn't get the notice they said because she hadn't incurred a layoff. And the reason that they said she did not incur a layoff had nothing to do with the tax regulation. It had to do with this made-up provision that there hadn't been a reorganization or any of those items, none of which are incorporated within the definition of layoff. They just grafted them on for the purpose of denying benefits. That they don't get to do to an unambiguous provision. That is all I have unless there are further questions. Fine. Thank you very much. Thank you for your arguments. We'll reserve decision. Thank you, your honor.